**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RAMONA J. GERGENI,

        Plaintiff,

vs.

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY,

        Defendant.

No. 17-CV-4037-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.*    *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*    *Valid Arbitration Agreement* . . . . . . . . . . . . . . . . . . . . . . . *5*
        *1.*   *Disparity in bargaining power* . . . . . . . . . . . . . . . . . . *6*
        *2.*   *Substantive unfairness* . . . . . . . . . . . . . . . . . . . . . . *7*
            *a.*   *Unilateral modification* . . . . . . . . . . . . . . . . . *8*
            *b.*   *Fees and costs* . . . . . . . . . . . . . . . . . . . . . . *9*
            *c.*   *Unilateral damages* . . . . . . . . . . . . . . . . . . . *10*
    *B.*    *Arbitrability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## *I. INTRODUCTION*

The matter before the court is Defendant Evangelical Lutheran Good Samaritan

Society's ("Good Samaritan") "Motion to Stay Proceedings and Compel Arbitration" ("Motion") (docket no. 4).

## II. RELEVANT PROCEDURAL HISTORY

On May 30, 2017, Plaintiff Ramona J. Gergeni filed a Complaint (docket no. 1) asserting a claim of age discrimination against Good Samaritan, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and the Iowa Civil Rights Act ("ICRA"), Iowa Code § 216.6. On July 27, 2017, Good Samaritan filed the Motion. On August 24, 2017, Gergeni filed a Resistance (docket no. 9). On August 31, 2017, Good Samaritan filed a Reply (docket no. 12). Neither party has requested oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the ADEA claim because it arises under the Age Discrimination in Employment Act of 1967. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The district court has supplemental jurisdiction over the state law claim because it is so related to the claim within the court's original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). In other words, "the federal-law claim[] and state-law claim[] in the case derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them . . . in one judicial proceeding." *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (third alteration in original) (quotation marks omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).

## IV. RELEVANT FACTUAL BACKGROUND

### A. Parties

Gergeni is a citizen of the United States and a resident of Iowa. Complaint ¶ 3. Good Samaritan is a North Dakota corporation licensed to do business in the State of Iowa. *Id*. ¶ 4.

### B. Overview of the Dispute

On February 14, 2002, Good Samaritan hired Gergeni as a Registered Nurse. Motion Exhibit A (docket no. 5-1) at 1. In 2004, Good Samaritan implemented the Fair Treatment Policy, "which include[d] the mandatory arbitration of covered disputes." *Id*. Good Samaritan "required all current and new employees to sign an Agreement to Mediate/Arbitrate Claims and Disputes." *Id*. The Agreement to Mediate/Arbitrate Claims and Disputes stated that, "[b]y continuing their employment relationship, the parties acknowledge that they understand and agree to follow and abide by the Fair Treatment Policy and Procedure as a condition of employment." Motion Exhibit B (docket no. 5-2) at 1. On December 21, 2005, Gergeni signed the Agreement to Mediate/Arbitrate Claims and Disputes. *Id*.

Periodically thereafter, employees would receive updated copies of Good Samaritan's employee handbook, which contained the current version of the Fair Treatment Policy. Employees would sign a handbook acknowledgment form, "or otherwise agree to the terms of the [h]andbook by [their] continued employment." Motion Exhibit A at 2.

On April 2, 2014, Gergeni signed the Acknowledgment Form (docket no. 5-3), acknowledging that she had received the current employee handbook, which contained the 2014 Fair Treatment Policy (the "Agreement") (docket no. 5-4). *See* Motion Exhibit A at 2. The Agreement provides in relevant part:

> Except as otherwise specified[,] . . . the Fair Treatment Policy applies to all legal claims or disputes arising out of the

> employment relationship, including termination of employment, that either party may have against the other.
>
> . . . .
>
> [Good Samaritan] reserves the right to revoke or modify the Fair Treatment Policy, but only as applied to prospective claims and disputes, and only upon a minimum of thirty . . . days' notice to all affected employees.
>
> . . . .
>
> Unless the arbitrator decides otherwise, each party is responsible for their own attorney's fees and any other costs or out-of-pocket expenses incurred by that party.

Agreement at 2-3, 5. On December 18, 2015, Gergeni resigned from Good Samaritan. Exhibits in Support of Resistance (docket no. 9-2) at 1.

On May 30, 2017, Gergeni filed the instant action alleging that Good Samaritan had discriminated against her based on her age, in violation of the ADEA and the ICRA.

## V. ANALYSIS

In the Motion, Good Samaritan argues that the court should compel arbitration of Gergeni's age discrimination claim pursuant to the arbitration provision of the Agreement. *See* Motion at 1-2. Gergeni contends that the court should not compel arbitration because the Agreement is procedurally and substantively unconscionable. *See* Brief in Support of Resistance (docket no. 9-1) at 4-8.

The Federal Arbitration Act ("FAA") states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Arbitration Act thus establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate." *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotations omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to

4

arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

When reviewing an arbitration agreement, courts consider: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4; *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005)). Gergeni does not dispute that the claim raised in the Complaint would fall within the arbitration agreement. Rather, she limits her challenge to the validity of the arbitration agreement.

### A. Valid Arbitration Agreement

"Gergeni claims that a combination of procedural and substantive facts render the arbitration agreement unconscionable" and, therefore, the court "should declare the entire agreement to be void." Brief in Support of Resistance at 6, 10. Specifically, Gergeni argues that the disparity in bargaining power and the substantive unfairness of the arbitration provision render the Agreement unconscionable. *Id.* at 6-9.

"State contract law governs whether an arbitration agreement is valid." *Quam Const. Co. v. City of Redfield*, 770 F.3d 706, 708 (8th Cir. 2014) (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001)). "A contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Bartlett Grain Co. v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013) (quoting *C&J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011)). "[W]hether an agreement is unconscionable must be determined at the time it was entered." *C&J*, 795 N.W.2d at 81. Courts generally

analyze the following factors of unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness. *See Bartlett Grain*, 829 N.W.2d at 27. "Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable." *Faber*, 367 F.3d at 1053 (citing In re *Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa Ct. App. 1989)).

Gergeni argues that two factors, disparity in bargaining power and substantive unfairness, support a finding that the Agreement is unconscionable. *See* Brief in Support of Resistance at 6-8. However, to the extent that Gergeni's argument could pertain to the remaining factors, the court finds that, because she signed the Acknowledgment Form after receiving the employee handbook, Gergeni has failed to establish lack of assent, lack of notice or unfair surprise. *See Faber*, 367 F.3d at 1053 ("There is assent, clear notice, and no unfair surprise here because [the employee] signed the agreement, which we presume that he read before signing."). The court shall now address the remaining factors.

### 1. *Disparity of bargaining power*

Gergeni points to the "disparity of bargaining power" between the parties and contends that she was "merely one at-will employee at one of [Good Samaritan's] many locations." Brief in Support of Resistance at 6. Good Samaritan does not dispute that there is a disparity of bargaining power between the parties. *See generally* Reply at 2-3.

The court finds that there was a disparity of bargaining power between Gergeni, a sole at-will employee, and Good Samaritan, a corporation with numerous locations across the country. *See* Exhibits in Support of Resistance at 1; Brief in Support of Resistance at 6; *see also Faber*, 367 F.3d at 1053 (concluding that "[t]here was unquestionably a disparity in bargaining power, as [the defendant] is a large national company and [the employee] did not have the ability to negotiate and change particular terms in the form contract"). The court notes that this disparity of bargaining power is a factor weighing in

favor of finding unconscionability. *See Faber*, 367 F.3d at 1053. However, "[m]ere inequality in bargaining power does not make the contract automatically unconscionable . . . and it is not enough by itself to overcome the federal policy favoring arbitration." *Id.* (citation omitted). Nevertheless, "disparity of bargaining power . . . calls for careful scrutiny of the substance of the contract." *Id.*

In light of the disparity of bargaining power, the court shall carefully scrutinize the substance of the Agreement to determine if it is unconscionable.

### 2. *Substantive unfairness*

Gergeni claims that the Agreement is substantively unconscionable because: (1) Good Samaritan "had the unilateral right to revoke the [A]greement or amend any of its terms at any time, subject only to the limitation that amendments would apply to prospective claims on [thirty] days notice"; (2) the Agreement "provides that each party is responsible for their own attorney[] fees and costs"; and (3) the Agreement gave Good Samaritan "the unilateral right to seek damages and costs." Brief in Support of Resistance at 7-8.

Substantive unconscionability "includes 'harsh, oppressive and one-sided terms.'" *Bartlett*, 829 N.W.2d at 27 (quoting In re *Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008)). "A provision will be invalidated if it is a 'nefarious provision, inimical to the public good.'" *Faber*, 367 F.3d at 1053 (quoting *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984)). "However, the doctrine of unconscionability does not exist to rescue parties from bad bargains." *C&J*, 795 N.W.2d at 80; *see also* In re *Shanks*, 758 N.W.2d at 515 ("People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." (quoting *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982))). The court finds that none of Gergeni's claims support a finding of substantive unconscionability.

7

### *a.     Unilateral modification*

Gergeni first argues that the Agreement is substantively unconscionable because Good Samaritan "had the unilateral right to revoke the [A]greement or amend any of its terms at any time, subject only to the limitation that amendments would apply to prospective claims on [thirty] days notice." Brief in Support of Resistance at 7-8. Good Samaritan asserts that "a provision allowing unilateral modification is not invalid as long as employees are given reasonable advance notice and any such modifications apply only to prospective claims." Reply at 3.

The court finds that Good Samaritan did not have an unfettered ability to modify the Agreement. Rather, pursuant to the Agreement, Good Samaritan could "modify the Fair Treatment Policy, but only as applied to prospective claims and disputes." Agreement at 3. This eliminates concerns that Good Samaritan might attempt to alter the Agreement to influence pending disputes. *See generally Owen v. Bristol Care, Inc.*, No. 11-04258-CV-FJG, 2012 WL 1192005, at *2 (W.D. Mo. Feb. 28, 2012) ("[I]n the employment context, contracts which permit unilateral amendments, by an employer, that are prospective in application and which employees are afforded reasonable advance notice of modification may prevent an employer's mutual promise from being rendered illusory."), *rev'd on other grounds by* 702 F.3d 1050 (8th Cir. 2013).

Further, the Agreement requires Good Samaritan to provide a minimum of thirty days' notice to all affected employees. Agreement at 3. This would provide employees an opportunity to review the modified agreement and to determine whether the employee wanted to continue employment under the revised terms. *See Cicle v. Chase Bank USA*, 583 F.3d 549, 554-55 (8th Cir. 2009) (finding that a clause giving the plaintiff thirty days to reject changes to the arbitration agreement, which would close her account, eliminated concerns regarding unconscionability).

Although a unilateral modification provision may be unconscionable in some cases,

the court finds that because the Agreement limited Good Samaritan's ability to modify the Agreement by requiring notice and restricting the modification to prospective claims, the provision was not substantively unconscionable.

### b. Fees and costs

Gergeni also contends that the Agreement is substantively unconscionable because it "provides that each party is responsible for their own attorneys' fees and costs." Brief in Support of Resistance at 8. Gergeni argues that this provision "nullif[ies] statutory rights" and therefore "should be declared per se unconscionable."[1] *Id*. Gergeni cites to 29 U.S.C. § 216(b), which states in relevant part, that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs [in an ADEA action], allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." Gergeni claims that because the Agreement provides that each party shall pay their own attorney fees and costs, it is contrary to 29 U.S.C. § 216(b) and, therefore, it is unconscionable.

"[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Agreement, when read in totality, does not require Gergeni to forgo any substantive rights. Rather, Gergeni attempts to isolate only a particular portion of the

---

[1] To the extent that Gergeni asserts that the amount of the fees provided for in the agreement are unconscionable, she has made no showing regarding an inability to pay at any amount. *See Faber*, 367 F.3d at 1053-54 ("The burden of showing that arbitrators' fees will be cost-prohibitive falls on the party seeking to avoid arbitration. . . . The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration." (citations omitted)).

relevant provision to give the appearance of unconscionability. Such an approach to contract interpretation runs contrary to Iowa law. *See C&J*, 795 N.W.2d at 77 (explaining that Iowa courts "strive to give effect to all the language of a contract" and that "an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect" (quoting *Fashion Fabrics of Iowa, Inc. v. Retail Inv'rs Corp.*, 226 N.W.2d 22, 26 (Iowa 1978))).

The full provision of the Agreement states that, "[u]nless the arbitrator decides otherwise, each party is responsible for their own attorney's fees, and any other costs or out-of-pocket expenses incurred by that party." Agreement at 5. This provision, when read in its entirety, is not incompatible with any statutory rights provided by 29 U.S.C. § 216(b). This provision leaves it within the arbitrator's power to award attorney fees and costs if appropriate under the statute. *See Faber*, 367 F.3d at 1052 ("The arbitrator may determine if a party has waived statutory rights, and may choose to enforce substantive statutory rights even in the face of contractual limitations."). Because this provision does not require Gergeni to forgo any substantive rights, she has failed to carry her burden establishing that this provision renders the Agreement substantively unconscionable.

### c. *Unilateral damages*

Gergeni also claims that the Agreement is substantively unconscionable because it gives Good Samaritan "the unilateral right to seek damages and costs." Brief in Support of Resistance at 8. Gergeni argues that this provision "nullif[ies] statutory rights" and therefore "should be declared per se unconscionable." *Id*. Good Samaritan asserts that the "Acknowledgment Form contains a confidentiality agreement and entitles Good Samaritan to recover damages and fees related to any breach of [the confidentiality] agreement." Reply at 4. Good Samaritan asserts, therefore, that this provision "does not govern the instant dispute." *Id*.

The Acknowledgment Form states in relevant part: "[Good Samaritan] is entitled to recover damages and costs, including attorney's fees caused by any breach of this policy and/or a management agreement and, as the case may be, to seek other specific actions to enforce or prevent any violations of the agreement." Gergeni argues that the because the Acknowledgment Form provides that Good Samaritan is entitled to recover damages, it attempts to nullify Gergeni's statutory rights to damages under 29 U.S.C. §§ 216(b) and 626(b).

After reviewing the entirety of the Acknowledgment Form, the court finds that the provision at issue does not attempt to provide Good Samaritan with the unilateral right to seek damages and costs under the Agreement. Rather, it provides for damages and costs to which Good Samaritan may be entitled in the case of disclosure or unauthorized use of its trade secrets or patented, copyrighted or confidential information. *See* Acknowledgment Form. Even assuming that this provision governed arbitration claims, however, it does not attempt to limit the relief to which an employee is entitled. Rather, it simply provides that Good Samaritan may seek damages. *See C&J*, 795 N.W.2d at 77. As stated above, whether an award of damages would be proper in this case is a determination left to the arbitrator. *See Faber*, 367 F.3d at 1052 ("Although arbitration agreements that limit the relief an arbitrator may award are disfavored, arbitrators have power to fashion relief. The arbitrator may determine if a party has waived statutory rights, and may choose to enforce substantive statutory rights even in the face of contractual limitations."); *see also Gilmer*, 500 U.S. at 26. Because this provision does not require Gergeni to forgo any substantive rights, she has failed to carry her burden establishing that this provision renders the Agreement substantively unconscionable.

Gergeni has failed to carry her burden of establishing that the terms of the arbitration provision were harsh, oppressive or inimical to the public good, as required for a finding of substantive unconscionability under Iowa law. Accordingly, Gergeni has

11

failed to establish that the Agreement is either procedurally or substantively unconscionable.

### B. *Arbitrability*

Gergeni does not dispute that the claim raised in the Complaint would fall within the arbitration agreement. *See generally*, Brief in Support of Resistance at 5. Even if Gergeni had raised this issue, the court finds that the parties have delegated this determination to the arbitrator.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "[A]n arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009).

The arbitration provision in the Agreement provides that "[t]he arbitrator, and not any federal, state or local court, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Fair Treatment Policy, including matters of arbitrability." Agreement at 4. This language expressly leaves disputes regarding the application or meaning of the Agreement to an arbitrator. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Accordingly, the question of whether Gergeni's claim falls within the scope of the arbitration provision of the Agreement shall be left to the arbitrator.

### VI. *CONCLUSION*

For the foregoing reasons, the Motion (docket no. 4) is **GRANTED**. The Clerk of

Court is **DIRECTED** to close this case administratively, subject to being reopened upon the conclusion of the arbitration proceedings. The parties are **DIRECTED** to notify the court if, and when, the case needs to be reopened.

**IT IS SO ORDERED.**

Dated this 6th day of March 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA